The opinion of the Court was delivered by
Frost, J.
who after stating some of the facts of the case proceeded as follows.
The first objection to the writs of Hall, and others named, is, that new writs could not be issued until the costs of the former were paid. The objection, in effect, affirms that the first writs are not regularly discontinued, but are still pending. At the same timejf is insisted that the first writs are illegal, because the bonds given by the plaintiffs, by the form of the execution of them, bind neither the principals nor the agents, and are void as the obligations of either. The writs issued in November were not served by the delivery of copies to W. H. Byne, who was in possession of the property alleged to belong to the absent debtor, but the service was made by the sheriff’s taking possession of the property. In Moore and Davis vs. Byne and Hust, at December term, it was decided that the service of those writs by the seizure of the property into the possession of the sheriff, was illegal, and the property ordered to be restored to W. H. Byne. That decision supersedes both of the questions concerning the discontinuance of the first five writs, and the validity of the bonds. An illegal service of process is not the commencement of an action, the pendency of which may be objected to a second suit; and if the writs are set aside for an irregular service, it is not material to go beyond, *441 and enquire whether the bonds on which they issued were regular.
The next objection is, that the bonds on which the writs issued are void, because the condition of each recites that a writ is about to be sued out, not by the plaintiff, but by the agent.
It was decided in the case of Dillon vs. Watkins, 2 Sp. 445, that under the Act of 1839 the clerk was required to issue a writ of attachment, on a bond given by the agent of the plaintiff. The condition of the bond in this case expresses, with sufficient certainty, the obligation of B. C. Yancy, agent of Charles Hall, to pay to Enoch Byne the damages he may sustain by any illegal conduct in issuing the writ of attachment against him, at the suit of Charles Hall, for a debt due by Byne to Hall, pursuant to the Act of 1839.
The remaining objection is, that the writs were never lawfully levied on the property; nor served on any one as garnishee, who was in the possession of the property at the time of the service or since.
The first section of the Act to amend the attachment laws of this State, passed in Dec. 1844, (11 Stat. 290,) provides that the person in whose possession any property of the absent debtor shall be attached, who shall not claim the same as creditor in possession, shall surrender the same to the sheriff; or shall enter into bond to the sheriff not to waste or eloign the property attached.
The second section provides that if the plaintiff, or any person authorized by him, will make oath that any person who is summoned as garnishee, has in his possession any property of the absent debtor, and that such person is about to remove the property from the State, or waste or destroy the same, the sheriff shall cause the person having such property of the absent debtor in his possession, to enter into bond with sureties, that the obligee shall surrender the property according to law.
The mischief which this Act was intended to prevent, was the frequent waste and removal from the State, of the goods attached, by the garnishees, whom the law previously permitted to remain in possession. To correct *442 this abuse and secure the rights of the attaching creditors, it is provided that in all cases property attached shall be taken into the custody of the sheriff. Exception is only made in favor of a garnishee claiming to be creditor in possession, against whom the plaintiff makes no charge of an intention to waste or remove the goods. On the oath of the plaintiff that he has cause to believe the property attached will be carried out of the State or wasted, the sheriff shall and may cause any person in possession to give security that he will surrender the property according to law.
The authority of the sheriff extends to any person whatever, without regard to any claim he may set up to the property; otherwise the Act would be easily evaded, in all cases requiring its interposition, by pretended claims of property or demands against the absent debtor.
The power to enforce a compliance with the Act is not limited or defined. The terms of the Act are, he shall cause the person having the property to give the security required. The emergency is an alleged danger of the removal of the property of the debtor, the only means of satisfaction to his creditors, beyond the jurisdiction of the court, or of a defeat of justice by wasting the means which should satisfy its demands. The omission to express in the Act any manner in which the sheriff should proceed, which would have excluded every other proceeding, may well be understood to imply the intention of the Legislature that any measures which the circumstances of the case might render necessary, should be authorized.
But it is not necessary to enquire what is the extent of the power of the sheriff under this Act. The question in this case is, whether the sheriff may not retain the property, which he has taken under an attachment, and has in his power and control, until the claimant shall give the security required. Under the trover Act of 1827, the sheriff is required to “cause” the defendant to enter into bond for the production of the chattel sued for. It has been decided in Poole vs. Vernon, 2 Hill, 667, that he may arrest and imprison the defendant until he complies. It is a much inferior exercise of power to compel compliance with *443 the attachment Act by distraining the property of the defendant. It is intimated in that case that an arrest of the defendant was the only proper mode of compelling him to give bond. But it is to be noticed that the defendant had secreted the property, and the sheriff had no alternative. The use of the same term in the two Acts to express the duty of the sheriff, suggests that the same construction should extend to both Acts. But the cases are widely different. Under the trover Act the jurisdiction of the court attaches on the person of the defendant, and by coercion of legal process he may be compelled to perform the judgment of the court.
The Act only provides a security, in addition to the judgment, by a lien on the subject of the action. But in a suit by attachment, the defendant is not amenable to the process of the court, and if the goods attached are removed or wasted by an absconding or insolvent garnishee, the jurisdiction of the court is defeated and the creditors are left remediless. In such case no substitute can be had for the property attached, and as possession of it is indispensable, the duty and power of the sheriff, in enforcing the security for its surrender, should be chiefly directed to the use of such means as may ensure the production of it, to satisfy the demands of the suitors. If the garnishee absconds, the delivery of the goods attached, “according to law,” can only be secured by taking possession of them. The construction of the Act which will authorize the sheriff to detain the property of the absent debtor which may have been taken into his possession, is entirely consistent with the terms of the Act, and most conducive to the purposes for which it was passed.
In this case the claimant of the property alleged to belong to the absent debtor, was probably out of the State when his agent demanded possession. If it had been delivered, the action would have been defeated. The seizure of the property under the attachment writs was legal, and the service of them valid; and the sheriff- was authorized to retain the property until security was given for its forthcoming.
The case of Moore and Davis vs. Byne and Hust, de *444 termines the writs issued in November to have been illegally served by the sheriff, in taking the property of the absent debtors from the possession of W. H. Byne.
The motion to reverse the decision of Circuit Court is refused.
The whole court concurred.